May it please the Court, the case law instructs us that the analysis in these cases is case-by-case, factually intensive. So without belaboring the facts, I want to try to hit some of the high points. The Bruckelmyer patents at issue in this case... Yes, Your Honor, and I'd like to... I think you're referring to the district court judge's opinion and his reliance on the Hall case, and I'd like to just look at that section of that opinion so the issue that's up here for review is clear. The parties here agree that the contents of the file wrapper were available for public inspection at the Canadian Intellectual Property Office in Hull, Quebec, Canada. There was no contention that the contents of the file wrapper were disseminated more widely or in any other format. The Hall case involved a single dissertation that had been indexed and shelled in a library in Germany, and if you look at the case, the case also cites the director of the library as saying that copies had been made freely available to the readers of the library. What's the difference between those facts and your facts? Well, no copies were made available here. Well, copies would be made available by the Canadian Patent Office, I would think, to each and every person who came there and asked for one. But that's the problem, Your Honor. In the Hall case... Well, maybe that's a problem or maybe it isn't, but in terms of would copies be provided to requesters, the answer has to be yes, they would. And in that sense, it's just like the Hall case. Yes, you would have to go to the Canadian Patent Office, you would have to request the file, but yes, I agree that if you did that, you could obtain a copy of what was in the file. And so could the next person and the next person and any number of people who wanted a copy could get a copy. The Canadian Patent Office was absent, present in the Hall and absent in our cases, any indexing of the cancelled material that is alleged to invalidate Mr. Brocklemyer's patents here. The material that is alleged to invalidate Brocklemyer's... ...printed publications about technology. Well, the Wire case, I think, is the standard and it has two prongs. The document has to be in the public domain, which is simply, is it possible to get it, and I think that's the question. We agree that's a non-issue here. Of course it's possible to get it from any patent office anywhere in the world. That's right. The file history or the patent. The second part of the Wire test is, is it sufficiently accessible that interested persons of ordinary skill in the art could locate and obtain the document with reasonable diligence. That's where the indexing factor comes into play. And there is no indexing here, there was indexing in Hall. There was no method of finding this material whatsoever except to go to the office and stumble... This was a patent. This was an issued patent, I think. Yes. And if one is, there's public notice that patents are issued, and one can look at the file wrapper, just as occurred in the Wire case. It was an Australian patent application. Here it was Canadian. What's the difference? All you had to do was go to the Canadian patent office and look at the file wrapper and there it is. Well, there's a large difference between the Tenney case, I believe, is the one you're asking about in our case, because in that case there was a publication of an abstract of the application in the Gazette or Journal that the patent offices put out. Well, here's just a publication of the whole patent. No, it sits in a room for someone to come find. No, no, the patent, the patent. That's true, that's correct. The patent was public. But remember that the material... Wait a minute, wait a minute. So given the publication of the patent, widespread publication of the patent, why couldn't the ordinary artisan then go to the appropriate office, turns out to be a hall of the Canadian patent office, and ask for the prosecution history document? I suppose you could, but why wouldn't you? Because you see in the patent what it's all about, including warming ground. That's my point, Your Honor. You don't see that in the patent. Sure you do. Because the material has been cancelled. No, the invalidating material has been cancelled. It is no longer in the patent. No, no, but the patent talks about an alternative use of the technology being to warm frozen ground. It also did. And that would put the ordinary artisan on notice of the likely benefit of getting the prosecution history. I disagree with that, Your Honor. I'm sure you read many patents, I do also. At least 80% of all patents have catch-all linguas that say, and other uses include, and then there's a list of other uses for which the patentee is given no disclosure whatsoever. No enabling disclosure of what it takes to use the patent and technology for those uses. I don't see why it would be any different in the case of this patent, whether you're heating, setting cement in a wooden box, or whether you're heating the ground because you're about to put down a cement slab on top of the ground. It would work exactly the same way. Even I can see that. So I don't see why the ordinary artisan, trying to see what's already been invented, perhaps borrow some technological tips, wouldn't consider this patent as publicly issued of great interest, and thereby be on notice to see what else might be learnable from looking at the prosecution history. Well, you're raising an issue that's not here in this case, and that is whether or not the Canadian patent itself renders Ruckelmeier's patent obvious. No, that's not what I'm saying at all. What I'm suggesting to you, and I'd like to have your response on this precise question, I consider the issue to be, could the ordinary artisan find the anticipating material? I consider the court to have found that the anticipating material is not found in the issued, published patent, but only in the unissued, unpublished prosecution history. So then the question becomes, would the ordinary artisan be able to find the prosecution history because the patent itself is published? And it seems to me the patent, part of the specification that talks about eating frozen ground, would tell the artisan enough to put him on notice that he better also get the prosecution history document. Well, again, I disagree because this catch-all language is present in at least 80% of all patents. Which would mean that in 80% of all patents, the researcher would want to see the prosecution history as well as the patent. What's the matter with that? Well, the matter with that, Your Honor, is that we're dealing with the universe of the entire world. What you are asking, then, is for the patentee or the patent examiner to look at all the patents throughout the world. No, not at all. All I'm saying is that if somebody later finds anticipating patents or printed publications, then under the statute, wisely or not, it anticipates and therefore invalidates the patent, even if the ordinary artisan had no idea that it was out there. Well, that proposition, with all respect to the Court, is not accurate because there are cases, Cronin, for example, Tenney, for example, where the document was found. Yet the document was held not to be anticipatory, not to be invalidating prior art, because it was not sufficiently accessible because someone using reasonable search technique could not find the document. So you can't simply say that simply because a document was found that the patent should be invalidated. No, I agree with that. I'm not saying any document qualifies as prior art. Any publicly accessible document qualifies as 102B prior art. So the issue was, as you said, is this file history sufficiently publicly accessible? And I think I have to agree with you that by itself, no. But with the aid of the patent itself, which was publicly issued, widely available, it seems to me maybe it was findable. Clearly, your opponent found the figures three and four. Yes, Your Honor, but there were five Ruckenmeyer patents over a period of several years, and there were four separate examiners, and not one of the examiners found it. If you have unlimited resources. We can't take a dispositive of what a reasonable artisan, ordinary artisan, would or wouldn't find what the harassed examiner with 16 hours on average actually found. That can't be the dispositive thing. It may be a relevant factor. It's a good ground of argument, but it can't be the test. I agree, but it brings me back to my point. There are cases where documents were found. They are not invalidated. So the test is not, was it possible to find the document somehow? I agree with that. Was it possible to find the document through reasonable diligence, through reasonable search means? And my point, Your Honor, is that when someone cancels material from the patent, it is no longer in the patent. The patent does not serve as an index. No, but the material certainly is still in the file. Yes, the material is in the file. Pardon me, but the cancellation is simply the Canadian Patent Office's way of amending applications. In the United States, it's customary to delete this paragraph, insert this sentence, etc. But in Canada, you substitute pages. Well, I would agree with you that with respect to claims, it is customary to substitute and insert. With respect to the description of the invention, I have never seen it. Perhaps you have, but that's exactly what happened here. The entire description of the invention in the original application was deleted, cancelled, and replaced by other material. But I'm not sure this is even relevant because it's in the file. Regardless of whether it's cancelled or supplemented or replaced or overlooked or whatever, it's there. It's in the file. We can see it's in the file. It's possible to find it, but that's not the standard. The standard is, can it be found with reasonable diligence? My point is that catch-all phrases like the thawing frozen ground, warming liquid storage, propane storage tanks, warming water boils, are in virtually every patent, at least 80% of all patents. They don't need any reasonable person skilled in the art to go look at the file history to see if there's a disclosure because if the patentee had a disclosure to make, it wouldn't be in the face of the patent. If he had something to claim, it would be in the face of the patent. If an application is laid open in the sense that it is made publicly accessible, publicly available, and an abstract is published, would you consider that application to be a printed publication as of that date? As of the date the abstract is published and the application is laid open? That's a different type of application. Correct.  You would even though what is set forth in the abstract is only a fraction of what is disclosed in the application? Yes, except that the abstract is supposed to abstract the nuts and bolts, the guts of the application. In this case, that application did not actually ever hit the light of day. It sat in the file. When the file was opened, that application had been shredded, taken apart, and you could not today order the initial application from the Canadian Patent Office. Are you saying the issuance of the Canadian patent serves a different function than the publishing of the abstract when an application in another setting is laid open? If the abstract in that setting naturally leads you to the subject matter... Actually, because the material is cancelled, it leads you away. I've got only a minute left. I want to hit one other issue, which I don't think is in the cases. As far as I'm concerned, this is a matter of first impression, at least since 1917. But you need to look at the statutes. The statutes treat printed publications in foreign countries differently from any other validation method. In Ray Tenney says, what Congress had in mind is the likelihood of dissemination to the American U.S. public. That's why they allow printed publications only in foreign countries to invalidate. So I think the hurdle has to be a little bit higher for someone doing a search or examination or going to learn something about a technology, if they have to go to a foreign country, and not just any. Because if you're starting in square one, you don't know which foreign country to go to. All right. Thank you, Mr. Lunsett. Mr. Davis. May it please the Court, I'm here on behalf of THC Machine Company. I want to address Mr. Lunsett's argument here. As he stated, I think public accessibility is undisputed here. And we're looking at it as something that is reasonable. Are you also speaking for Ground Heater? No, I should have. Ground Heater settled Sunday night. Thank you very much. That solves that mystery. Sorry, Mr. Davis, but with that clarified, please go ahead. Yes. One of the things that Mr. Lunsett seems to intimate is that because the invalidating material is not in the patent itself, or I guess to parallel to Inouye Hall, that the invalidated material is not in a summary of the dissertation or summary of the abstract, but somehow that's relevant to something. I think what the summary or an abstract is good for is to lead someone to, would that reasonably lead them to the invalidated material or the relevant material? To a printed publication. Correct. And in this situation, I think it's also undisputed that the file wrapper itself became a public document on the day of the patent issue. There's no dispute about that. So it is, anyone can go get it, and anyone can go get the patent, obviously. And in the patent, it talks about thawing of various objects, including concrete forms and so on, and frozen ground. How does one search Canadian patents? Does one go to the shoes and thumb through certain classifications, or are there published indexes? There are. It's an international class search system, much like the United States. You can go online and search the patents now. By title? Correct. You can go by class. By class. You can do that as well. In fact, I find it interesting that Mr. Lences mentions that there is no indexing or no catalog of this. In fact, Mr. Ruppemeier had an expert at the district court speak directly to how the file wrapper and the patent are kept together. They're kept on microfiche, and anyone can go get a copy of it. Well, certainly the patent is indexed in the sense that it's classified, etc. But what in the Canadian patent itself indicates that the file contains anything other than what is set forth in the patent? Well, if you read the patent specification itself, it talks about the thawing of frozen ground. So one would expect that the file history would contain that text. But what in the patent would suggest that it contains anything else? Well, that is in the specification of the patent itself. So one might actually look at the file history. Well, I don't see anything necessarily in the claims, but maybe I should go look as a reasonable person to the rest of the file history. Maybe something was left off, or it was going to file divisional, or something else was going to take place. I think you're missing my question. What I'm asking is, clearly, one would expect that everything that is contained in the issued patent will be found in the file history. But what is it in the patent that suggests that the file history contains something else? Well, I think that's... Because we're not talking about the disclosure of the word thawing frozen ground that appear in the patent. That's not what is at issue. What is at issue here is the something else that is in the file history that did not get included in the patent. And what is it that would suggest to interested persons from the patent that the file contains something more than what is set forth in the patent itself? Well, I guess if you're talking about what's more on the actual figures that are validating, then I would go to the method of the very figures that are used to validate the patents here is described in the patent specification itself. So I might read that, say there's a method here. I might look and see if there's some figures on that, or there's some additional disclosure on that. Maybe. I mean, you might speculate, but there's nothing, as I read this patent, there's nothing to say, uh-huh, it mentions thawing frozen ground. If you get the file history, you'll find some good drawings in there. There's nothing that suggests that. There's nothing that says this is an abstract of, you know, greater subject matter that can be found in the file history if you go and look there. I would say that the court's person does not require any kind of, oh, by the way, there's additional figures or there's more topic of this. Mr. Davis, what about actual figure three in the patent? I'm not talking about in the file record, in the patent. Is that relevant? Yes, it certainly is relevant. In fact, I'm glad you went there, Your Honors. There's several figures in the patent. None of these are, none of these figures are extremely different from one another. I think even the figures in the patent, this is not really an issue for the appeal, but the figures in the patent that are in the patent and were not canceled certainly are related to thawing frozen ground. Illustration of typical concrete grade beam application as opposed to what's in the file wrapper and not in the patent, typical application to provide heat beneath a concrete slab. Why wasn't that argued or are they not very close? Oh, that was, that would have argued at the district court, but we were addressing more of the issue of are these particular, they have admitted that these figures are invalidating, so we weren't getting into was the patent itself invalidating or... But the question is what would lead you to figures three and four in the file wrapper? My question is would figure three in the patent lead you to look further into the file wrapper? I guess not. Absolutely it would. Absolutely it would because it talks about the same thing. Apparently it's not a very strong argument. No, but it's, again, we're looking at what's reasonable that someone might investigate further. I see the line in the patent. I see that these hoses are on a ground and they talk about for warming the earth. At some point it's reasonable for me to investigate further. I don't think it's, it's not, the cold fusion is in there somewhere. You think the three words in the patent text, thaw and frozen ground, are more significant? I think combined they're more significant, but I think, I guess they're about the same significant, I would say. Mr. Davis, why should we all be speculating about this? Wouldn't this be the subject of testimony by ordinary artisans in the field? No, I say not. In fact, I think we already have expert testimony in this case that was supplied by Mr. Rothmeier himself talking about how you would go look for this thing. You could find it and it's indexed and cataloged. And in fact, we did find it in this case. And it's not, it wasn't kept under a, in some sort of hollowed out stump in Central Park or something where no one knew about it. It was kept. No, no, no, we all seem to agree that the issue is whether something in the published, widely published patent would suggest to the ordinary artisans that they better go get the file history also. That seems to be the issue. And I'm troubled by the fact that we all seem to be sitting here guessing, speculating just off the top of our heads of what the ordinary artisan would think to do having read just the patent. And I'm uncomfortable with that because probably none of us are the ordinary artisan in this art. And that suggests to me that we may have an inadequate record here. This may be an issue that needs to be tried rather than being exposed of on summary judgment. I would strongly disagree with that. And I would cite my basis for that, that this isn't a case of first impression. What we're doing here is applying the standards to test public accessibility. And we look at whether it's indexing or these sorts of things. But we don't necessarily go through and say, okay, now what would have, we're applying how this thing is available. And I think that is totally. The indexing you seem to be pointing to are a few parts of the patent. The words, the sawing frozen ground and perhaps figure three. And you're saying that's enough indexing to send the artisan to go get the prosecution history. Well, certainly more indexing than many of the other. In Ray Hall. How do we know that? What was the indexing in Ray Hall? I read the case over and over. I couldn't really find a good description of the indexing. I don't see how you can compare it with the, quote, indexing in these two or three fragments in the 119 Canadian patent. What we're talking about is a very small type of, a very small summary of something that leads someone to some invalidating disclosure. What we're talking about here is a small amount of stuff leading to invalidating disclosure. No question it's invalidating. Well, he's conceded that. The question is whether you can consider the prosecution history or not. And that seems to turn on whether you would be led to read it by what is widely published, namely the patent with the two fragments I've mentioned. And I don't know that there's any testimony addressing what the ordinary artisan would make of the fragment where the words saw frozen ground or the fragment of figure three in the issued patent. Is there such testimony in the record? There is no testimony in the record, primarily because the plaintiff stipulated to dismissing based on the fact that it was found to be a print publication. No, no, no. He was more careful than that. He said if the prosecution history counts as 102B prior art, then I agree it is anticipated. It's very different. The whole case is it doesn't count as 102B prior art because it's not sufficiently indexed. Well, I think it's if the Federal Circuit overrules the finding that it's a print publication, then I don't think it's invalidating. But beside the point is I think what we're— I'd like you to give me your best reasons why this shouldn't go back for the development of a proper record. This is a very fact-specific kind of test. Is there adequate indexing? It's going to change case by case by case. We don't seem to have much evidence bearing on the point. It seems like to have a fair, sound decision for both sides, we ought to have a developed record. Well, why is that wrong? Because there isn't anything else that is needed. Who are we going to have speak about this? Just somebody that might—a searcher or something? What we have here is we have exactly what the Canadian Patent Office does with file wrappers and patents and keeps them. We have the very language of the patent itself. Don't tell us all the things that are undisputed. The thing that's disputed is whether there's enough in the published patent to send the ordinary artisan to go read the file history. He says no. You say yes. We can't flip a coin. It's a fact-based inquiry. I can't understand why you are so resistant to the idea of asking ordinary artisans in this field what, in general, they would make of this. Isn't it normally the case that everything important is included in the patent? Because otherwise you don't have enablement. And so normally you don't expect to find a whole lot of additional technological stuff in the prosecution history. Usually the prosecution history narrows what the application says. Here we have the flip. We have a prosecution history where the patent is much narrower than the original application. Well, I don't disagree with that. I think there are many patents out there where you apply for and you have a very broad disclosure. You might decide to cut out certain claims or not go after a certain line of claims at that point. File division later may decide not to go with it. So you have a file wrapper, a file history that has additional related things in it disclosed. And while that may not be prior art before the application issue or publishes or the patent issues or so on, it certainly would become publicly available and it is related to what was actually patented and what was in the specification. This happens all the time. And if this is not a printed publication, based on the facts right here, I think it opens up this, it's almost this kind of, there's always going to be some kind of, well, could they have possibly found it? It's in a place where it would be found. It is in a related, certainly in a very related patent. It's kept in a patent office where I certainly would go look if I'm looking for something, if I'm thawing something, I'm not going to go to Brazil probably. I'm going to go to Canada. This is all in the type of place where you could find something like this. And I disagree. I don't think there would be any more fact-finding on this. And the district court should be fine. All right. Thank you, Mr. Davis. Mr. Lunseth will restore a couple minutes if you need it for rebuttal. I think I have 26 very short seconds. I'm not kidding. I've read your honors, the district court's opinion, because it is a very focused issue before you today. He said there is no contention that the contents of the file wrapper were disseminated more widely or in any other format. He says there is no indexing, nothing. The public availability of the document in the file is enough for me. I say there is no case that has ever so held, and I don't think this court is prepared to go that far. On the issue of remand, I had not considered, frankly, the possible testimony of someone reasonably skilled in the art. I can guarantee you that he'll get someone who will say, yes, we would look at it. We will get someone who will say no. I can tell you that Pat D is deceased. That's in the file wrapper. And who knows if the examiner is still around. The issue has never been raised by the other side. It came up on summary judgments with whatever evidence you see in the file. So I'm not sure that's a good solution. Very well. We thank both counsel for a very clear argument. We take the case under advisement.